# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with Instagram username<br>910kevv stored at premises controlled by Meta<br>Platforms, Inc. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:22MJ *313* |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §  922(g)(1) | Possession of a firearm by a convicted felon |
| 18 U.S.C. § 922(o) | Possession of a Machine gun |
| 18 U.S.C. § 933 | Firearms Trafficking |

The application is based on these facts:

See Affidavit of Special Agent Carmen E. L. Basgall

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Carmen E. L. Basgall
*Applicant's signature*

Carmen E. L. Basgall, Special Agent (ATF)
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 8/9/2022

*Judge's signature*

City and state:  Winston-Salem, North Carolina

The Hon. Joi Elizabeth Peake, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
INSTAGRAM ACCOUNT 910kevv THAT
IS STORED AT PREMISES CONTROLLED
BY META PLATFORMS, INC.

Case No. 1:22 MJ 313

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Carmen E. L. Basgall, a Special Agent with the Federal Bureau of Alcohol, Tobacco,

Firearms, and Explosives, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain Instagram account that is stored at premises owned,

maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic

communications service and/or remote computing service provider headquartered at 1601

Willow Road in Menlo Park, California.  The information to be searched is described in the

following paragraphs and in Attachment A.  This affidavit is made in support of an application

for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require

Meta to disclose to the government copies of the information (including the content of

communications) further described in Section I of Attachment B.  Upon receipt of the

information described in Section I of Attachment B, government-authorized persons will review

that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF") and have been since June 2020.  Prior to working with ATF, I graduated

from Appalachian State University in August 2015 with a bachelor's degree in Criminal Justice and December 2016 with a master's degree in Public Administration. I was employed as a Special Agent with North Carolina Alcohol Law Enforcement from June 2017 until June 2020. I have received various training including the Criminal Investigator Training Program at the Federal Law Enforcement Training Center located in Glynco, Georgia, the Special Agent Basic Training Program at the ATF National Academy, North Carolina Basic Law Enforcement Training, The North Carolina Alcohol Law Enforcement Special Agent Training Academy, and North Carolina Police Law Institute. The aforementioned trainings included formal training in affidavit and search warrant preparation as well as formal education in federal firearms laws. I am currently assigned to ATF's Charlotte Field Division and stationed at the Fayetteville Field Office.

3.      During the course of my employment with ATF, I have been personally involved in a number of firearms trafficking, manufacturing, and possession cases. My training and experience in the investigation of the illegal possession and trafficking of firearms has provided me with information concerning the normal patterns and procedures through which individuals acquire, store, maintain, and/or manufacture firearms. I have had discussions with senior ATF agents with further experience and/or expertise in conducting investigations related to individuals who unlawfully possess and traffic in firearms. As a result of my own personal experiences, the training I have received, and the information that I have obtained from working with other experienced ATF agents, I am familiar with violations of Federal Firearms Laws.

4.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of:

   a.   18 U.S.C. § 922(g)(1), which prohibits a person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year from possessing a firearm;

   b.   18 U.S.C. § 922(o), which prohibits a person from transferring or possessing a machinegun; and

   c.   18 U.S.C. § 933, which prohibits a for a person from transferring or receiving, or attempting or conspiring to transfer or receive, a firearm if they know or have reasonable cause to believe the use, carrying, possession, or receipt would constitute any Federal or State felony;

   have been committed by KEVIN RAY FRIER.

6.      Additionally, I am aware through my training and experience that:

   a.   Persons involved in the unlawful sale, possession, and/or manufacture of firearms often take photographs or videos of themselves with firearms and post these photographs and videos on social media platforms such as Facebook and Instagram.

   b.   Persons often utilize social media platforms to send text messages, direct messages, or video chat, in reference to, their unlawful possession, manufacture, and/or acquisition of firearms.

7.      I believe there is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

3

## JURISDICTION

8.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.     On Friday July 29, 2022, this affiant was made aware an individual identified as KEVIN RAY FRIER by other law enforcement agencies, was utilizing his Instagram account "910Kevv," hereafter referred to as the SUBJECT ACCOUNT, to advertise the sale of "Glock switch" devices. A "Glock Switch" is a device that, when affixed to the rear of a pistol, converts the firearm from semiautomatic fire to fully automatic fire. "Glock Switches" have been previously ruled as firearms and machineguns themselves by ATF's Firearms and Technology Division (FATD).

10.     Upon visiting the SUBJECT ACCOUNT, this affiant observed the following photograph date stamped as "May 15."

4



11.     The above photograph depicts a device consistent with this Affiant's knowledge and training to be a "Glock Switch" device. The skeletal tattoo depicted on the hand of the individual in the above photograph has been previously identified by law enforcement as

belonging to FRIER. According to the caption on the photograph, it appears that FRIER is attempting to sell the devices for $120 per device.

12.     This affiant was also able to view the below photograph date stamped "May 20".



13.     The above photograph again depicts a device consistent with this Affiant's knowledge and training to be a "Glock Switch" device. The skeletal tattoo depicted on the hand

6

of the individual in the above photograph has been identified by law enforcement as belonging to FRIER. According to the caption on the photograph, it appears that FRIER is attempting to sell a completely plastic version of the devices for $50 per device.

14.     On Friday July 29, 2022, this affiant submitted a preservation request to Meta Platforms Inc., for the SUBJECT ACCOUNT.

15.     On Sunday July 31, 2022, this Affiant was notified additional content had been posted to the SUBJECT ACCOUNT. This Affiant was able to observe a portion of the SUBJECT ACCOUNT'S "story" and the following screenshot.



16.     The above photograph appears to be what this Affiant knows through training and experience to be a Polymer80 "80% Pistol Frame Kit." A Polymer80 "80% Pistol Frame Kit" is a kit that can be utilized by individuals to manufacture a firearm. The SUBJECT ACCOUNT appears to be asking for $100 in exchange for the kit depicted in the photograph.

17.     This Affiant was also able to view a video where the following screenshot was obtained from the same "story" from the SUBJECT ACCOUNT.



18.     The above screenshot was obtained from a video also posted to the SUBJECT ACCOUNT'S "story" wherein an individual shoots a firearm that appears in this Affiant's training and experience to shoot with a fully automatic rate of fire. The shooter depresses the trigger once and multiple rounds of ammunition are fired off in rapid succession without the need to depress the trigger another time. Affixed to the rear of the pistol in the photograph is what this Affiant recognizes to be consistent with a "Glock Switch" device. The caption "Lmk if you need it" invites viewers of the "story" to contact the SUBJECT ACCOUNT if they desire to obtain a "Glock Switch."

19.     This Affiant also showed the video to North Carolina State Bureau of Investigation S/A Tyner and inquired if she would be able to identify the individual shooting the automatic firearm in the video. S/A Tyner advised she was able to identify the individual in the video as FRIER because she recognized the tattoos visible in the video as belonging to FRIER.

20.     Based on the above information, there is probable cause to believe that violations of 18 U.S.C. §§ 922(g)(1), 922(o), and 933 have been committed, are being committed, and/or will continue to be committed by FRIER and evidence thereof exists within the posts, photographs, messages, and other data pertaining to the SUBJECT ACCOUNT.

## BACKGROUND CONCERNING INSTAGRAM[1]

21.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy,"

9

Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

22. Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

23. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

24. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

25. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single

---

https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

10

Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

26.    Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

27.    Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

28.    Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

11

29. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

30. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

31. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

32. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

33. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the

12

group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

34. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

35. Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

36. Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

37. Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and

13

advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

38. In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

39. For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

40. In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

41. For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, voice messages, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

14

42.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

43.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

44.     Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

15

45.     Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

46.     Based on the forgoing, I request that the Court issue the proposed search warrant.

47.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

48.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

Respectfully submitted,

/s/ Carmen E. L. Basgall

_____

Special Agent
ATF

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this affidavit this ⁹ day of August 2022.

The Honorable Joi E. Peake
United States Magistrate Judge

17

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram account 910kevv (active on, but not limited to, July 29, 2022), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on July 29, 2022 (Meta Case Number 7126590), Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All business records and subscriber information, in any form kept, pertaining to the account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, July 1, 2021, to July 29, 2022;

7.     Privacy and account settings, including change history; and

8.     Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.     All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, July 1, 2021, to July 29, 2022;

C.     All content, records, and other information relating to communications sent from or received by the account July 1, 2021, to July 29, 2022, including but not limited to:

    1.     The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

    2.     All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

    3.     All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

    4.     All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the account and other Instagram users July 1, 2021, to July 29, 2022, including but not limited to:

    1.     Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

    2.     All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

    3.     All contacts and related sync information; and

    4.     All associated logs and metadata;

2

E.      All records of searches performed by the account July 1, 2021, to July 29, 2022, and

F.      All location information, including location history, login activity, information geotags, and related metadata July 1, 2021, to July 29, 2022.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. §§ 922(g)(1), 922(o), and 933 those violations involving KEVIN RAY FRIER and occurring after July 1, 2021, for each account or identifier listed on Attachment A, in the form of the following:

A.    Records and information revealing, referencing, or constituting the manufacture, possession, and sale of firearms, specifically machineguns;

B.    Records and information revealing or referencing the proceeds of firearm sales;

C.    Records and information revealing or referencing co-conspirators and customers; and

D.    The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

4

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.      such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

5

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature